

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| HERBERT PUTZ,<br><br>                           *Plaintiff,*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                           *Defendant.* | CIVIL ACTION NO. 3:05-CV-00032<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on Defendant's August 1, 2005 Rule 12(b)(1) Motion to Dismiss pursuant to the Federal Tort Claims Act. Following an initial hearing on October 7, 2005, the Court gave the parties 60 days to conduct limited discovery and an additional 45 days to file briefs, and an evidentiary hearing was held on March 23, 2006. For the following reasons, Defendant's motion will be GRANTED.

### I. FACTUAL BACKGROUND

A. <u>Facts Admitted by Both Parties</u>

On November 16, 2004, Ann Ferguson was working as a relief rural letter carrier for the U.S. Postal Service when she attempted to deliver to Plaintiff a letter requiring his signature upon delivery. (Gov't S-o-E Memo. Exh. A p. 6, 33-34; Mot. for Judg. ¶3).[1] Plaintiff threatened to complain to Ms. Ferguson's employer about the speed of her driving down his driveway. (*Id.*, p.

---

[1] Ms. Ferguson's delivery route includes Plaintiff's residence. (*Id.*, p.6).

1

10-11; *Id.* ¶5).

B. Other Evidence

According to Ms. Ferguson, when she attempted to deliver the certified letter, Plaintiff yelled, swore, and threw a pen and the certified letter notice at her, and threatened her.[2] (Gov't S-o-E Memo. Exh. A p. 10, 35; Exh. E). She testified that she "wasn't going to go back" to Plaintiff's residence and "would quit my job after 20 years" rather than to do so. (*Id.*, Exh. A p. 38, 41). Ms. Ferguson reported a simple assault to the Madison County Sheriff's Department on November 16, the day of the alleged incident.[3] (*Id.*, p. 13; Exh. D p. 9).

She reported the incident to her supervisors, Sharon Whitbeck and Blain Krikenburger, and spoke to Inspector O'Donnell about it. (*Id.*, Exh. A p. 14-15, 23-24, 34-36, 40-42; Exh. C p. 10-12; Exh. D p. 8-9). She testified that she sought her supervisors' advice because she was on the job when the incident occurred, was at her "wit's end," and wanted guidance as to her options. (*Id.*, Exh. A p. 12-14, 38, 40-41). Inspector O'Donnell reiterated to her what the Madison County sheriffs had advised: that she had the option of filing a criminal complaint against Plaintiff. (*Id.*, Exh. D p. 16-17). Immediately after her conversation with O'Donnell, on November 18, 2004, Ms. Ferguson left work, appeared before a magistrate and filed a sworn complaint against Plaintiff, and did so while on work time with the knowledge and approval of

---

[2] Ms. Ferguson testified that she believes Mr. Putz was upset about receiving a letter from the sender, the Environmental Protection Agency. (Gov't S-o-E Memo. Exh. A p. 11).

[3] Inspector O'Donnell confirmed with the Sheriff's Department that there was a dispatch record of her call. (*Id.*, Exh. D p. 9).

2

Ms. Whitbeck. (*Id.*, Exh. A p. 23-24, 42-43, 46; Exh. C p. 28; Exh. E).[4]

Plaintiff's version of the events of November 16, 2004, differs greatly. He alleges that Ms. Ferguson drove down his driveway at a high rate of speed, damaging its newly graveled surface. When he threatened to complain to her superiors about her driving, "words between them were exchanged." (P. Reply, Putz Decl. ¶¶2, 4; Mot. for Judg. ¶¶5-6). His neighbor, Ben Stanton, avers that he was at Plaintiff's residence that day helping him repair farm equipment and witnessed the exchange between Mr. Putz and Ms. Ferguson, and that "[a]t all times, Mr. Putz was courteous and kept his distance when he talked with her." (P. Reply, Stanton Decl. ¶¶2, 6).[5] The next day, Plaintiff delivered a letter of complaint to Ms. Ferguson's place of work. (Mot. for Judg. ¶7). In response, Ms. Ferguson allegedly maliciously obtained a criminal warrant against him for criminal assault and battery. (*Id.* ¶¶9, 15).

## II. PROCEDURAL BACKGROUND

Plaintiff originally brought this malicious prosecution action against Ms. Ferguson on June 8, 2005, in the Circuit Court for Madison County, Virginia. (*Putz v. Ferguson*, Case No. CL05001974). On June 28, 2005, the United States removed the case to this Court and moved to have the United States substituted as the sole defendant pursuant to 28 U.S.C. § 2679(d)(2), a provision of the Federal Tort Claims Act ("FTCA"). In support of its motion, the United States filed a certification by the U.S. Attorney for the Western District of Virginia that Ms. Ferguson

---

[4] Although the Court held what was designated to be an "evidentiary hearing" (*see* Order, Oct. 13, 2005) on March 23, 2006, as to the scope-of-employment certification issue, none of the deposed witnesses was brought before the Court to testify.

[5] Neither Mr. Putz nor Mr. Stanton was brought before the Court to testify at the March 23, 2006 evidentiary hearing.

3

was acting in the scope of her employment at the time of the actions that gave rise to Mr. Putz's complaint. In a July 14, 2005 Order, the Court granted the relief requested, dismissing all claims against Ms. Ferguson and substituting the United States as the sole defendant.[6]

Then United States then filed a motion to dismiss, arguing that this Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity with respect to the tort Plaintiff alleges.[7] After a hearing on the motion, the Court issued an order allowing the parties sixty days to conduct discovery limited to the question of whether Ms. Ferguson was acting within the scope of her employment during the incident out of which Plaintiff's claim arose, and setting a schedule for the submission of briefs.

On January 10, 2006, the United States filed its Memorandum of Law in Support of the U.S. Attorney's Certification of Scope of Employment, and on January 11, 2006, Plaintiff filed

---

[6] The Court's Order was not discretionary, as 28 U.S.C. § 2679(d)(2) provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

[7] The FTCA provides for partial waiver of the United States' sovereign immunity from *respondeat superior* liability. 28 U.S.C. §§2671-80. However, 28 U.S.C. §2680(h) expressly excludes from waiver the intentional tort of malicious prosecution by a non-law enforcement employee of the United States. The United States also argued for dismissal on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the FTCA. Because the sovereign immunity grounds for dismissal is dispositive, the Court need not address the latter argument.

4

his own Memorandum of Law opposing the certification. Both parties filed responsive briefs. Because the parties' accounts of the events of November 16, 2004, sharply differ, the Court set a hearing for March 23, 2006.

## III. APPLICABLE LAW

In *Gutierrez de Martinez v. Lamagno*,[8] the Supreme Court held that a §2679(d)(2) scope-of-employment certification may be challenged and subject to judicial review. Thus, "the Attorney General's certification of scope of employment is conclusive only for purposes of removal to federal court and does not conclusively establish the propriety of substituting the United States as the party defendant." *Ross v. Bryan*, 309 F.3d 830, 835 (4th Cir. 2002).

### A. Plaintiff's Burden in Challenging a Scope-of-Employment Certification

The ground rules for judicial review under *Gutierrez* were detailed by the Fourth Circuit in *Borneman v. United States*, 213 F.3d 819 (4th Cir. 2000), *cert. denied, Borneman v. United States*, 531 U.S. 1070 (2001). The plaintiff has the burden of persuasion and must prove by a preponderance of the evidence that the defendant federal employee was not acting within the scope of her employment. *Id.* at 827. To carry her burden of proof, a plaintiff must submit specific evidence that contradicts the certification, and not rely merely on conclusory allegations and speculation. *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155 (4th Cir. 1997). If the plaintiff does not present "competent, verified evidence, including affidavits, establishing that the defendant was not acting within the scope of employment ... [then] the issue is determined by the United States Attorney's certification." *Wilson v. Jones*, 902 F. Supp. 673,

---

[8] 515 U.S. 417, 434 (1995).

5

679 (E.D. Va. 1995).

If the plaintiff presents persuasive evidence refuting the certification, the burden shifts to the United States to provide evidence and analysis to support its conclusion that the alleged torts occurred within its employee's scope of employment.[9] *Borneman*, 213 F.3d at 827. At all stages, the district court is charged with weighing the sufficiency of the evidence, determining whether genuine issues of fact exist, and ultimately resolving these factual issues.[10] *Id.* In making its determinations, the district court must apply the law of the state in which the alleged tort occurred. *Id.*

B. Virginia Law of *Respondeat Superior*

Under Virginia law, an employee's act is generally within the scope of employment if "(1) it was expressly or impliedly directed by the employer, or is naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, 'and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.'" *Kensington Assoc. v. West*, 362 S.E.2d 900, 901 (Va. 1987) (quoting *Broaddus v.*

---

[9] The Court explained that this burden-shifting proof scheme may warrant the trial court's allowing limited discovery, or conducting an evidentiary hearing, to resolve competing factual claims. *Id.*

[10] Plaintiff asserts that the district court "is bound to accept as true the plaintiff's basic allegations of fact for the purposes of contesting the government's scope-of-employment certification," citing *Webb v. United States*, 24 F. Supp. 2d 608, 613 (W.D. Va. 1998). This statement is clearly inconsistent with *Borneman*, the controlling authority—which was decided nearly two years after *Webb*—and has not since been followed in this district. *See Hayden v. United States*, 2002 WL 246764 *2 (W.D. Va. Feb. 20, 2002) (unpublished opinion).

6

*Standard Drug Co.*, 179 S.E.2d 497, 503-04 (Va. 1971)); *Ross v. Bryan*, 309 F.3d 830, 834 (4th Cir. 2002).[11]

## IV. FINDINGS OF FACT

Having considered the parties' briefs, arguments, and evidence, and pursuant to its obligations under *Borneman* to weigh the evidence, the Court makes the following findings:

1. On November 16, 2004, working in her official capacity as a postal employee, Ms. Ferguson attempted to deliver to Plaintiff a letter requiring his signature upon delivery.

2. That day, Plaintiff told Ms. Ferguson that he would inform her superiors that she drove too quickly down his driveway, and the two "exchanged words."

3. Ms. Ferguson perceived his demeanor to be threatening, and called the Madison County Sheriff's Department later that same day to report the incident.

4. Ms. Ferguson discussed the incident with her superiors over the next two days.

5. Immediately after Inspector O'Donnell reiterated to Ms. Ferguson that she had the option of filing a criminal complaint against Mr. Putz, which she understood to be her employer's suggested course of action, she left work to do so.

6. With her supervisor's knowledge, Ms. Ferguson stayed "on-the-clock" when she left work to file the complaint.

---

[11] Subsequent Virginia caselaw has clarified that even if an employee does not act with an intent to further the employer's interest—as when the employee commits an intentional tort—that employee will be regarded as acting within the scope of employment if "the service itself, in which the tortious act was done, was within the ordinary course of such business." *Gina Chin & Assoc., Inc. v. First Union Bank*, 537 S.E.2d 573, 578 (Va. 2000) (quoting *Davis v. Merrill*, 112 S.E. 628, 631 (Va. 1922)).

7

7. Plaintiff has not rebutted the statements of Mrs. Ferguson showing that in filing the complaint, she was motivated at least in part by a desire to continue working for the Post Office unimpeded by the fear she felt for her safety as a result of Plaintiff's demeanor and conduct on November 16, 2004.

## V. CONCLUSIONS OF LAW

Under Virginia law, Ms. Ferguson's action obtaining the warrant was within the scope of her employment if it was:

(1) Expressly or "impliedly" directed by her employer, or "naturally incident to" her employer's business, <u>and</u>
(2) Done with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and not "wholly from some external, independent, and personal motive."

Assuming, without deciding, that Plaintiff satisfied his initial burden of submitting specific evidence contradicting the U.S. Attorney's certification by offering an unverified complaint and two bare bones affidavits, he has not provided evidence of sufficient weight and credibility to counter the evidence the United States has offered supporting it.[12] Because the weight of the evidence shows that (i) Ms. Ferguson filed the criminal complaint against Plaintiff immediately after a conversation with Inspector O'Donnell which led her to believe this was her employer's recommended course of action, (ii) her supervisor approved her decision to file the complaint during work time, and (iii) her complaint arose out of a work-related incident, the

---

[12] The Court particularly notes that unlike the Government's deponents, neither Mr. Putz nor Mr. Stanton were subject to cross-examination or gave sworn testimony in any detail as to the events in question.

8

Court concludes that her actions were both impliedly directed by her employer, and "naturally incident to" post office business. The latter conclusion is justified because seeking the protection of the criminal justice system was a direct means of restoring her sense of personal safety and comfort in carrying out her duties. The Court also finds that Plaintiff has not rebutted that Ms. Ferguson acted with the intent at least in part to further her employer's interest, because her testimony shows that she filed the complaint to prevent disruption to her work caused by fear of conflict with a customer on her service route. The evidence therefore supports the Attorney General's certification that Ms. Ferguson was acting within the scope of her employment during the incident out of which Plaintiff's claim arose.

## VI. CONCLUSION

Plaintiff has not carried his burden of refuting the United States Attorney's scope-of-employment certification. Therefore, the United States remains the sole defendant. The United States has not waived its immunity to suits claiming the tort of malicious prosecution by a non-law enforcement employee. 28 U.S.C. §2680(h). The Court therefore lacks jurisdiction over this matter and will grant the United States' motion to dismiss in an order to follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

March 29, 2006
Date

9